## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**CARDINAIR DAVIS**
8820 Trimble Way
Rosedale, MD 21237

        *Plaintiff*,

   v.

**THOMAS A. ALLERS**
*Individually and in his Official*
*Capacity as a Baltimore City*
*Police Sergeant*
Inmate No. 63378-037
FCI Coleman
846 NE 54th Terrace
Sumterville, FL 33521

and,

**JOHN CLEWELL**
*Individually and in his Official*
*Capacity as a Baltimore City*
*Police Officer*
242 W 29th Street
Baltimore, MD 21211

and,

**MOMODU K. GONDO**
*Individually and in his Official*
*Capacity as a Baltimore City*
*Police Officer*
Inmate No. 62925-037
FCI Butner
Old NC Highway 75
Butner, NC 27509

and,

**DANIEL T. HERSL**
*Individually and in his Official*
*Capacity as a Baltimore City*
*Police Officer*

**Civil Case No.: 1:19-cv-02750**

**\*Jury Trial Demanded\***

Inmate No. 62926-037
MCFP Springfield
1900 W Sunshine Street
Springfield, MO 65807

and,

**DEAN PALMERE**
*Individually and in his Official Capacity*
*as Former Deputy Commissioner*
1323 Crofton Drive, Lot 22
Bel Air, MD 21014

and,

**JEMELL L. RAYAM**
*Individually and in his Official*
*Capacity as a Baltimore City*
*Police Officer*
Inmate No. 102148
Kent County Detention Center
104 Vickers Drive
Chestertown, MD 21620

> *Defendants.*

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Cardinair Davis, by and through his attorney, Cary J. Hansel, and the law firm of Hansel Law, P.C., and sues the above-named Defendants, and as cause therefore states the following:

## INTRODUCTION

Plaintiff Cardinair Davis ("Mr. Davis" or "Plaintiff") was victimized by members of the Baltimore Police Department, namely officers Momodu Gondo, Daniel Hersl, Jemell Rayam, and Sgt. Thomas Allers, all of which have been implicated and convicted for engaging in corrupt activities, including falsifying evidence, and are currently serving time in federal prisons.

Officers Rayam, Gondo, Hersl, and Allers planted a gun in a vehicle in which Mr. Davis was merely a passenger and falsely claimed that Mr. Davis alerted them to the presence of the weapon, violating his rights under the Fourth Amendment to the Constitution of the United States.  Mr. Davis was kept incarcerated for approximately six months after the extreme corruption of these officers was revealed to the public.  Eventually, the false charges against Mr. Davis were resolved in his favor, dismissed on the grounds of *nolle prosequi*. The involved officers performed their criminal acts against the broader backdrop of a police department which condoned and/or actively promoted the violation of citizens' rights as ordinary practice.  This pattern and practice of permitting corruption was exemplified by the actions of Deputy Commissioner Palmere, who coached officers under his supervision on how to testify in order to avoid accountability for violating the rights of citizens.

## JURISDICTION AND VENUE

1)      This Court has jurisdiction pursuant to its powers to resolve federal questions under 28 U.S.C. § 1331.

2)      Venue is proper in this Court because all of the material events occurred in Baltimore City, Maryland, which is in this district.

3)      The Complaint is filed within three years of the cause of action.

4)      The amount in controversy exceeds $75,000.

## PARTIES

5)      Plaintiff Cardinair Davis (hereinafter "Mr. Davis" or "Plaintiff"), is, and was at all times relevant to the occurrence complained of herein, an adult resident of the State of Maryland.

6)      Defendant Momodu K. Gondo (hereinafter "Gondo") was, at all times relevant to the occurrences complained of herein, an adult resident of the State of Maryland, employed by

Baltimore City, Maryland, through the Baltimore Police Department as a police officer, and at all times relevant hereto was acting in his official capacity as a police officer and under the authority and color of law.

7)      Defendant Daniel T. Hersl (hereinafter "Hersl") was, at all times relevant to the occurrences complained of herein, an adult resident of the State of Maryland, employed by Baltimore City, Maryland, through the Baltimore Police Department as a police officer, and at all times relevant hereto was acting in his official capacity as a police officer and under the authority and color of law.

8)      Defendant Thomas A. Allers (hereinafter "Allers") was, at all times relevant to the occurrences complained of herein, an adult resident of the State of Maryland, employed by Baltimore City, Maryland, through the Baltimore Police Department as a police officer having the rank of sergeant, and at all times relevant hereto was acting in his official capacity as a police officer and under the authority and color of law.

9)      Defendant Jemell L. Rayam (hereinafter "Rayam") was, at all times relevant to the occurrences complained of herein, an adult resident of the State of Maryland, employed by Baltimore City, Maryland, through the Baltimore Police Department as a police officer having the rank of sergeant, and at all times relevant hereto was acting in his official capacity as a police officer and under the authority and color of law.

10)     Defendant Deputy Commissioner Dean Palmere (hereinafter "Former Deputy Commissioner Palmere") was, at all times relevant to the occurrences complained of herein, an adult resident of the State of Maryland, employed by Baltimore City, Maryland, through the Baltimore Police Department as a Deputy Commissioner of the Baltimore Police Department,

and at all times relevant hereto was acting in his official capacity as a police officer and under the authority and color of law.

## FACTS COMMON TO ALL COUNTS

11)     On May 17, 2016, Mr. Davis was a passenger in a vehicle which turned into the parking lot of the Wendey's at the Westside Shopping Center, located at 2413 Frederick Avenue, Baltimore, MD 21223.

12)     As soon as the vehicle pulled into the parking lot, at least three officers swarmed and approached the vehicle in which Mr. Davis was sitting.  At no time did Mr. Davis give the officers a reason to believe that he was participating in illegal activity.

13)     Defendant Officers than approached Mr. Davis and asked if he knew anyone who had committed any robberies, murders, or any other similar felonies.  Mr. Davis stated clearly that he did not.

14)      Because Mr. Davis stated he did not know of any illegal activities, Defendant Officers became angry, and without justification or probable cause proceeded to order Mr. Davis and his passenger out of the vehicle in order to conduct a search. Both Mr. Davis and the driver complied.

15)     Almost immediately, one of the Defendant Officers claimed to have discovered a Vulcan Machine Pistol handgun, magazine clip, and thirteen (13) .45 caliber ammunition rounds in the front passenger compartment.

16)     No handgun was discovered in the front passenger compartment of the vehicle, but rather, Defendant Officers knowingly, intentionally, and for a purpose other than bringing someone to justice, planted the handgun in the vehicle in order to justify the search of the vehicle as well as the arrest of Mr. Davis.

17)     Mr. Davis not only vehemently denied ownership of the weapon, but denied having ever seen the container in which the weapon was allegedly located.

18)     Mr. Davis was arrested and taken into custody, and Defendant Officer Rayam filed a Statement of Probable Cause alleging that Defendant Officer Hersl had approached the vehicle in which Mr. Davis was seated, asked if there was anything illegal in the vehicle, and that Mr. Davis allegedly blurted out "There's a gun in the vehicle," after which Defendant Hersl located and recovered the handgun from a red and white shoe box that was in a camouflage bag on the front seat passenger floor.

19)     Mr. Davis never blurted or otherwise stated that there was a gun in the vehicle. On the contrary, Mr. Davis vehemently denied ownership of the weapon, or that he had ever seen the container in which the weapon was allegedly located.

20)     Defendant Officers initiated a prosecution of Mr. Davis when Defendant Rayam filed his Statement of Probable Cause containing the following spurious charges:

a)     Violation of Md. Code Ann., Pub. Safety, § 5-133, possession of a regulated firearm after being convicted of CDS possession with intent to manufacture or distribute.;

b)     Violation of Md. Code Ann., Crim. Law, § 5-622, possession, ownership, carrying or transportation of a firearm after being convicted of a felony under title 5 of the Criminal Law Article;

c)     Violation of Md. Code Ann., Pub. Safety, § 5-133, knowing possession of a regulated firearm after being convicted of a disqualifying crime (controlled dangerous substance with intent to manufacture or distribute);

d)      Violation of Md. Code Ann., Pub. Safety, § 5-133, knowing possession of a regulated firearm after being convicted of a disqualifying crime (misdemeanor unlawful possession of a controlled dangerous substance);

e)      Violation of Md. Code Ann., Pub. Safety, § 5-133, knowing possession of a regulated firearm after being convicted of a disqualifying crime (misdemeanor handgun on person);

f)      Violation of Md. Code Ann., Crim. Law, § 4-203, wearing, carrying, and knowingly transporting a handgun in a vehicle upon the public roads, highways, waterways, airways and parking lots generally used by the public;

g)      Violation of Md. Code Ann., Crim. Law, § 4-203, wearing, carrying, transporting a handgun on and about their person; and

h)      Violation of Md. Code Ann., Pub. Safety, § 5-133, possession of ammunition, being prohibited from possessing a regulated firearm;

21)      Defendant Officers initiated a prosecution against Mr. Davis, with malice and/or a primary purpose other than bringing Mr. Davis to justice, since they had no probable cause for the search or arrest of Mr. Davis, and had planted the only evidence connecting Mr. Davis to an alleged crime.

22)      Prosecutors with the Baltimore City State's Attorney's Office added an additional charge and proceeded with the unlawful prosecution of Mr. Davis, relying on the false testimony of the arresting officers.

23)      Mr. Davis was incarcerated at the Baltimore City Detention Center from the date of his arrest on or about May 17, 2016, until on or about November 2, 2016.

24)     Mr. Davis was facing a five year minimum sentence due to the illegal and false charges against him, and because Defendant Officers were prepared to falsely testify that Mr. Davis had been found in possession of a handgun, Mr. Davis, on the advice of counsel, accepted a plea deal on or about November 2, 2016, that resolved the charges in exchange for time already served in pretrial detention.

25)     On March 1, 2017, federal agents arrested Defendants Rayam, Gondo, and Hersl, for engaging in a racketeering conspiracy and racketeering offenses while acting under color of law as sworn officers of the Baltimore Police Department, including stealing from arrestees and planting evidence to sustain arrests or prosecutions.

26)     The arrest of Defendant Officers prompted a review of Mr. Davis' case by Antonio Gioia ("SA Gioia"), chief counsel for the Office of the State's Attorney.

27)     SA Gioia found that the entire case against Mr. Davis was based on the testimony of the arresting officers, and that there was no outside corroborating evidence to sustain the charges against him, calling into question whether there was ever valid probable cause to search or arrest Mr. Davis.

28)     On or about July 12, 2017, after it had become clear that the evidence used against Mr. Davis to secure his conviction had been falsified by Defendant Officers, the case against Mr. Davis was activated in order to vacate the sentence and dispose of the matter with a disposition of *nolle prosequi*, which terminated the proceeding in favor of the falsely accused Mr. Davis.

29)     Though there was never any probable cause for the search, arrest, or prosecution of Mr. Davis, and though Defendant Officers knew there was no such probable cause, Mr. Davis was forced to serve six months before his plea deal was finalized on November 2, 2106.  For the

duration of that time and beyond, Mr. Davis maintained that he was never aware of or in possession of the firearm which was recovered during his arrest.

### FACTS RELEVANT TO CLAIMS
### AGAINST DEFENDANT PALMERE

30)     The individual defendants' conduct as alleged herein was anything but uncommon within the Baltimore Police Department ("BPD") in the years preceding the unlawful detention and prosecution of Mr. Davis. As detailed below, at the time the Defendant Officers falsely arrested and maliciously prosecuted Mr. Davis, BPD officers routinely violated civilians' Fourth and Fourteenth Amendment rights by arresting them without the requisite probable cause.  This behavior was not only condoned, but encouraged, rewarded, and protected by Defendant Palmere.

31)     Defendant Palmere, in his position of supervisory authority over Defendants Rayam, Gondo, Hersl, and other officers of BPD, failed to enact or enforce policies to adequately ensure that officers were not engaging in falsifying evidence, giving false testimony, coercing false confessions, and maliciously prosecuting citizens.

32)     In addition to failing to enact or enforce policy that would prevent such abuses of citizens' rights, Defendant Palmere actively enforced and promoted policies that encouraged officers such as Rayam, Gondo, and Hersl to commit such abuses and subsequently protected officers from accountability for their violations of civil rights.

33)     Upon information and belief, Defendant Palmere personally engaged in coaching officers in how to provide testimony in court to shield themselves from allegations of civil rights violations and illegal activity such as that for which Gondo, Hersl and Allers have been convicted.

## COUNT I
### Fourth Amendment Malicious Prosecution
### Civil Rights Act - 42 U.S.C. § 1983

34)     Plaintiff adopts and incorporates by reference the allegations contained in the foregoing paragraphs with the same effect as if herein fully set forth.

35)     Defendants Gondo, Hersl, Allers, Clewell, Rayam, and Palmere at all relevant times hereto, acted under color of State law.

36)     Defendants Gondo, Hersl, Allers, Clewell, Rayam, and Palmere deprived Plaintiff Davis of his rights under the Fourth Amendment of the United States Constitution, said rights including:

    a)      freedom from unreasonable search and seizure;

    b)      freedom from arrest without probable cause;

    c)      freedom from false imprisonment;

    d)      freedom false charges; and

    e)      freedom from malicious prosecution without probable cause.

37)     At all times relevant hereto, Defendants Gondo, Hersl, Rayam, Clewell, and Allers, deliberately subjected the Plaintiff to the deprivation of his rights with actual or implied malice, searching, seizing and arresting him without reasonable suspicion or probable cause to do so, thereby injuring him and depriving him of his liberty as alleged.  This treatment violated Plaintiff's right to be free from unreasonable search and seizure and arrest without probable cause as protected by the Fourth Amendment to the United States Constitution.

38)     At all times relevant hereto, Defendants Gondo, Hersl, Clewell, Rayam, and Allers, deliberately subjected the Plaintiff to the deprivation of his rights for a primary purpose in instituting the proceeding other than that of bringing an offender to justice, searching, seizing,

arresting, and prosecuting him without reasonable suspicion or probable cause to do so, thereby injuring him and depriving him of his liberty as alleged.  This treatment violated Plaintiff's right to be free from unreasonable search and seizure, arrest, and prosecution without probable cause as protected by the Fourth Amendment to the United States Constitution.

39)     Defendant Officers instituted proceedings against Plaintiff when they falsely charged him with eight separate criminal counts.

40)     The charges against Mr. Davis were resolved in his favor with a disposition of *nolle prosequi* after the probable cause underlying the search and arrest was called into question by the indictment of the arresting officers for racketeering, conspiracy, and various other offenses.

41)     Mr. Davis sustained injuries as a direct and proximate result of the individual Defendants' violation of his rights, experiencing the loss of his freedom, emotional pain and suffering, humiliation, and embarrassment, all to his detriment.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but not less than Ten Million Dollars ($10,000,000) plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, but not less than Ten Million Dollars ($10,000,000), and such other and further relief as the nature of the case requires.

## COUNT II
### Conspiracy to Interfere with Civil Rights-42 U.S.C. § 1985

42)     Plaintiff adopts and incorporates by reference the allegations contained in the foregoing paragraphs with the same effect as if herein fully set forth.

11

43)     Defendants Gondo, Hersl, Allers, Clewell, Rayam, and Palmere conspired for the purposes of depriving Plaintiff of the equal privileges and immunities under the law when they violated his Fourth Amendment rights against:

        a)     freedom from unreasonable search and seizure;

        b)     freedom from arrest without probable cause;

        c)     freedom from false imprisonment;

        d)     freedom false charges; and

        e)     freedom from malicious prosecution without probable cause.

44)     Defendants Gondo, Hersl, Allers, Clewell, and Rayam committed acts in furtherance of this conspiracy when they planted a gun on Plaintiff and used this fraud as the basis for Plaintiff's false arrest and malicious prosecution.

45)     Defendant Palmere committed acts in furtherance of this conspiracy when he coached Defendants Gondo, Hersl, Allers, Clewell, and Rayam on how to avoid liability for violations of citizens' civil rights.

46)     Mr. Davis sustained injuries as a direct and proximate result of the individual Defendants' violation of his rights, experiencing the loss of his freedom, emotional pain and suffering, humiliation, and embarrassment, all to his detriment.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but not less than Ten Million Dollars ($10,000,000) plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, but not less than Ten Million Dollars ($10,000,000), and such other and further relief as the nature of the case requires.

## JURY DEMAND

Plaintiff demands a jury trial as to all claims so triable.

Respectfully submitted,

HANSEL LAW, PC

_____/s/_____
Cary J. Hansel (Bar No. 14722)
2514 N. Charles Street
Baltimore, Maryland 21218
Phone:      301-461-1040
Facsimile: 443-451-8606
cary@hansellaw.com
*Counsel for Plaintiff*

13